Good morning, counsel. Are you ready to proceed? Good morning. I'm Chris White. I'm from the Office of the State Appellate Defender on behalf of Mr. Coates. The issue on appeal is whether the trial court erred when it instructed the jury that it could consider a police officer's right to use deadly force where that officer's status as a police officer was not relevant to the issues before the jury. At the time of the incident, the officer was not acting in his capacity as a police officer and his status as an officer was not an element of the offense. By being permitted to consider the justification of the officer's actions, an irrelevant consideration here, the jury was invited to conflate the justification of the officer's actions, the irrelevant consideration, with the legally determinative question of causation and foreseeability of the defendant's actions and Mr. Sago's death. Therefore, Mr. Coates requests that this court reverses conviction for first-degree felony murder and remand for a trial absent the offending instructions. When the trial court ruled on this instruction, the trial judge, he said, and I quote, I don't think, frankly, it makes an awful lot of difference. What difference does it make? Well, I think that's indicative of the problem here, actually, is I think it makes a great deal of difference because we're not talking about the ultimate issue of the felony murder. What doesn't make a great deal of difference here is the police officer's status, and by giving the added instruction which says that a police officer has sort of additional duties or additional rights, rather, namely to shoot a fleeing felon, it shifted the consideration from questions of foreseeability and causation, which you get with just the standard felony murder instruction, to did the officer act properly? Well, let me ask this question. Sure. When you say did the officer act properly, was it lawful for the officer to respond, whether he's acting as a private citizen or as a police officer? Was his conduct lawful under the law? Was his use of force lawful? With respect to the death of Michael Sago, it may have been, but whether it was or not is still not relevant because he was not acting as an officer in the eyes of the offenders. How do you distinguish what this court said in Heron v. Edison Police Fire and Pension Board, where an off-duty police officer in a neighboring town responds to a burglary to a neighbor's residence, and this court said that a police officer always is obligated to prevent the commission of a crime, whether on duty or off duty? Well, nobody's objecting to that. Clearly, the officer has a duty to respond or a right to respond to crime. With deadly force. Well, even with deadly force, although arguably I don't think it can be said that in this particular situation, given the videotape, that the jury had not been instructed on the rights of a police officer may not have concluded or may have concluded that the causation was broken at the shooting of Sago, as Sago was crawling out and was shot in the back. Do you have a case that suggests that that would break causation? I don't know that it would. Well, that's the issue here is the jury was confused by that because they don't. The jury was given information about whether he was a police officer or not is not really relevant to this case, whether or not he acted justifiably as a police officer is not relevant to this case. The relevant question here solely is, was it reasonable and was there a chain of causation? And by giving the instruction about a police officer to the jury to allow them the consideration, in fact, the considerations that you just made of, well, if he's a police officer, then he could have done that. But you did that properly. Therefore, he's guilty. You're not objecting to the admissibility of the officer's testimony regarding his background, his experience and his training, are you? No. Well, that background experience and training was in evidence and the jury knew he was a police officer. And according to his own testimony, he was responding the way he was trained to respond. The offenders did not know he was a police officer. That's my point here is he wasn't acting as a police officer. The reason we give police officers additional. The fact that his response is lawful, doesn't it make it more likely that his actions are not something that would break the chain of causation? It might be, but we don't know because that question wasn't presented to the jury without those additional instructions. Our concern here is purely with the instructions. Whether a rational jury could have found, absent those offending instructions, that the officer acted properly is a different question. They very well might have. But in this situation, by giving them those instructions, the reason we have additional instructions or one of the reasons we have additional instructions is it allows a police officer additional rights above an ordinary citizen. We encourage citizens to just sort of acquiesce or to give in to police authority. And here, that opportunity wasn't given. These offenders, there's nothing in the record to show that these offenders ever knew this was a police officer. In fact, Officer Pejeki stated he did not have time to tell them he was a police officer. So there's nothing here that we even, we can even assume that they were fleeing arrest, for example. I mean, if Pejeki were in full uniform, we could say, okay, they're fleeing arrest. They've been, you know, there's an armed officer here, a uniformed officer who's ordering them to submit to authority, and they didn't do it. That's a different situation. Here we have people running from, for all they know, an armed vigilante. And that may be proper. His actions may have been proper. But to allow the jury to consider the rights and responsibilities of a police officer in this limited circumstance I think was improper and confused the question. It allowed them to conflate the issues of was the officer's conduct justified with the issues of causation and foreseeability. But once they had all of the evidence about him to which you are not objecting, doesn't the jury also have the right to understand by way of instruction what, if any, responsibility or what his position was here or what he could do here? And might that not be the purpose of the instruction? Well, I think that's actually what they're not permitted to do is because what he could do here is not relevant to the question of whether there was causation or foreseeability. Because the officer's actions here, whether he was justified or not, don't go to whether the action was foreseeable. In fact, you could have the officer's actions be unjustified, and that may be a subject of a wrongful death suit or something. But it could still be foreseeability. It could still be within the causation. Your case is remarkably similar to the facts in People v. Hudson, the Illinois Supreme Court. Would you agree that your theory that the jury may have come to some different result is completely contrary to Hudson? I mean, Hudson is an off-duty police officer getting in a barbershop and responds exactly the same way as your client. The circumstances that you face here, and it's just textbook felony murder. It may be. So where's the prejudice? Where's the prejudice? Well, the prejudice is because we can't have confidence in the integrity of the jury verdicts because we don't know what their consideration was. In fact, much of the state's brief is concerned with the issue of whether or not the police officer acted correctly as a police officer. And we're simply submitting that is not the consideration. I mean, whether or not the police officer acted properly is in no way relevant to whether or not there's causation and foreseeability. I mean, it may be that if this is remanded back without that instruction, that the jury could come to exactly the same conclusion. There's no doubt about that. They very well might. But at least given that situation, we know that they were not faced with this issue of a police officer who acted responsibly. Therefore, the defendant must be guilty of felony murder. Is it relevant whether the victim acted properly as a private citizen? Or is that equally irrelevant to the foreseeability determination? Whether the victim acted? For Jackie, whether he acted properly as a private citizen. Is that equally irrelevant? No, I think the presumption would be that he's a private citizen. You could give an instruction that which one of the instructions that they gave, which was what an ordinary or private citizens rights rights are in that situation. Which is exactly the same. I mean, a private citizen can use deadly force to protect himself or another person from an unauthorized use of deadly force. Well, you've got somebody storming into a pizza place, brandishing a weapon, followed by a bunch of guys behind him. Could a private citizen then take out a gun and start shooting those people? Well, a private citizen probably could. And I think actually even the officer probably could or definitely could actually. Well, I mean, there are two different situations there because I don't think anybody is arguing that the actions against the defendant were completely proper. And if the defendant had died, for example, one of the co-defendants could probably be guilty of felony murder because that actually is in the course of that. But the question becomes, I think, when there is arguably a breaking causation there, as there was with the Michael Sago situation. And you have the jury focused on a question of whether or not the people who used the force were acting properly, whether rather than whether or not the defendant's actions were what caused the death and whether that death was foreseeable. Is it arguable that there was a breaking causation? Is that really arguable? Under Hudson and under Lowry and all the cases that talk about a defendant putting something in motion that ends up in the death, you don't have to foresee the exact sequence of events. But if you put in motion by committing a forcible felony something that results in the death of some person, Lowry was just some person on the street that got shot. Right. Well, that's where I think the confusing nature of the instruction comes into play, because they're specifically allowed in the case of a peace officer who is allowed to shoot a fleeing felon. Here, I don't think there's any question they were fleeing. Whether or not the jury would have come to the conclusion that it ended at the point that Prochecki and the pizza owner had obtained all the weapons and were then firing, I don't know. They may very well have found that that was part of the same course of conduct. He walked in with a weapon, the defendant. Right. He put it first to the chest of the owner who wasn't going to give up and was carrying a gun but probably thought it wasn't a good idea to pull it at that particular moment. And then he put the gun to the head of what he believed to be just another patron in there waiting for his pizza. Right. What if, and now the owner says, okay, you're not going to kill my patron, now let's go over here. What if it was the owner who had shot? Would it, you know, he's a citizen, he tried to shoot the defendant, and maybe, I don't think he's the one who did, but he tried to get the gun away. And it just so happens that the police officer knows that the owner's carrying a gun. I mean, how did the causation break? I'm having trouble with that. Well, the causation may have broken. The only, I think, arguable causation break here, which is a significant one because it's the basis for the felony murder conviction, is the shooting of Michael Sago, which was clearly, as he was going for the door, in fact, was nearly out the door. But I don't think it would be improper, I don't think a rational jury could not find that if the owner had done the shooting in that situation, it was the owner rather than the police officer, that that would constitute felony murder. And it may not, it may not, the rational jury may not find that it was the police officer. It may find that it was the police officer acted, gee, I almost did it there, not that the police officer acted rationally, but whether or not the causation chain was there. They may have still found that. But I think the problem here is with that particular jury instruction, allowing the jury to consider the status of the police officer is what led to the confusion. It may ultimately get to the same place. If there's a new trial without the offending instructions, a rational trial fact could still come to the conclusion. Arguably, I mean, they certainly follow the law. They have to come to that conclusion. Right. Unless they find a break in the causation. Well, again, if they follow the law, they have to come to that conclusion under these facts. These facts are identical to him or to Hudson. Well, you didn't have a break in here. You had a few seconds where where the person was clearly escaping. It was being shot at from behind. That's not that doesn't change anything with respect to who set that pattern of behavior in motion. It may be fine, maybe. But that's what the that's that's what the jury would need to consider. I mean, that may well be true, but they may find that it's not. They may find that that escape was a different when you had the sort of time there as he puts the gun down and then raises it again. They may have found that that was not what resulted or was not foreseeable for that matter. Even if it's causation, not foreseeable. But that's what we don't know. It's foreseeable that it's not foreseeable that a person is going to respond by shooting just because someone turns and begins to run that that that would break the cause. It might. The jury may find that it does. I don't know. That's a fair question for the jury, that the jury may find that that, yes, as he's sort of going for the door and, you know, he should be allowed to escape. I don't know if he should be allowed to escape. That's not the question before the jury. But that's your theory, that because he turned to run, that that's, you know, you have to stop. You can't repel that conduct. Now he's now he's leaving. No, I'm saying the jury may find that you're not permitted to shoot him three times in the back, killing him. You may be able to stop him in some other way. Maybe you shoot him one time. Maybe you get in front of him. Maybe you say, I'm a police officer. Stay right there. And you have him or allow him the opportunity to submit to authority. But I don't know. I don't know if that's what the jury will find, because that question wasn't before the jury asked if he was finding instructions. Didn't the running, though, start when the owner started the the struggle over the defendant's pistol? I mean, they started to disperse then. I think so. So the fact that he grabs a gun and, you know, he's he's following up on what's occurring. Correct. Well, I don't know, because his testimony was they were all charging. And then he shot, like I said, center mass as they approached. Yet every one of the defendants was struck in the back. So I don't I don't know if that's true. It does appear from the tape that certainly there was a struggle. It's off camera, so we don't know exactly. But there was certainly a struggle off camera where he got the gun. But there, too, I mean, perhaps as they're running, you know, perhaps lethal force isn't the proper response. Or a jury could have found that lethal force wasn't the response. I don't know that it was. You'll have an opportunity for rebuttal. Thank you. Good morning. On behalf of the people of the State of Illinois Council. What defendant never defines for us is an intervening cause. Whereas Black's Dictionary, which is relied on by People v. Herman, defines it. An intervening cause is an event that comes between the initial event in the sequence and the end result, thereby altering the natural course of events that might have connected a wrongful act to an injury. Pausing, watching someone escape a fleeing felon from a felony is not a superseding or an intervening act. All the case law negates that argument. And the case law, especially Klevenowski and Hickman, are very specific, saying this is an ongoing event. Fleeing is not a separate act from the crime, regardless of the fact that the elements of a burglary don't include escape or fleeing or anything else. It's all one event. This event, this crime concluded when the police, the on-duty police who were called, showed up, secured the scene, arrested the people and took them to the hospital. And that was the end of the event. But you can't, and what it seems like the defendant is saying here is that what he deems to be a confusing instruction took the jurors off point from considering the foreseeability of this ongoing event. Their instruction is not a superseding event. Their instruction is an instruction which was properly given because there was evidence to support it. If you had the self-defense instruction, the citizen instruction, why would you, you didn't introduce it I understand, but what was the purpose of introducing the police officer instruction? There was evidence that he was acting as a police officer. What evidence? In his own head? He testified, I am a Winnebago County Sheriff. I was off-duty but I become on-duty when I see a crime happening in front of me. And then he talked about how he reacted and why he reacted in the way he did. And all of that is relevant to show that he was a police officer on-duty. And indeed, you can't say that when Michael Sago was trying to escape that the event had ended because what did he testify and what does the video show? He put the gun down. He looked around. He immediately went and locked the door. He then called somebody, locked the back door, and you see in the lower left quadrant another employee going to lock that door.  He said, I never knew what happened to the defendant's gun until I went to the grand jury. And he said, I frisked him to see if he was still armed. He wasn't armed. And then he said, call 911 and gave first aid to Lamar Coates. Is there a difference between acting as a police officer as you're arguing now and efforts of a police officer to make a lawful arrest? Because this instruction doesn't talk about an officer need not retreat from acting as a police officer. This is specifically designed to talk about an officer need not retreat or desist from efforts to make a lawful arrest. But then it goes on to talk about, and if you can't, you can use deadly force to stop a fleeing felon. I would argue that this is extremely confusing language. There are a lot of wars in here. But they do say, I am on page eight of my brief. I have the instruction printed out. And the part that I underline, it says, and the person to be arrested is attempting to escape by use of a deadly weapon. It goes on. It says he can use deadly force. The person to be arrested. I mean, it's uncontroverted that he never said you're under arrest. He never announced his office. None of that. He was just basically protecting himself and others, correct? Correct. Well, he did order the defendant to remain there until the paramedics arrived. That was his testimony, correct? That I don't remember. That sounds correct. But that was after everything had, although, as I said, I really don't believe that the event ended until the police officers on duty showed up to secure the scene and take charge. Well, the issue was the force used to bring down Sago, whether that's to detain him, to arrest him, or to just simply keep him from robbing a place and shooting somebody else. Right. Exactly. Or going out and getting reinforcements. He had no idea. Well, the question was that this instruction is actually a caption, you know, policeman's use of force in making an arrest. And that's the caption of this instruction in the FBI. And in the end he was arrested. He did stop the felon. He stopped three out of the four. While they were, I mean, he was, his first initial reaction was to defend himself and others. However, they also gave the instruction for a citizen. And the citizen doesn't differentiate at all. It says you can use deadly force. So they objected, the defense objected below to that instruction, but it wasn't raised as an issue on appeal. So they forfeited anything having to do with an objection to that instruction. We don't know. That's my question. If you have that one. Right. And they're not, they objected below, they objected to the police instruction below. But if you have the instruction on the citizen, what's the purpose of, and they're almost identical. Almost. What's the purpose of adding the peace officer in the line of lawful arrest? Because the testimony was such, well, first of all, we don't know how the jury convicted. We don't know if they convicted because they said, aha, this was a police officer doing his duty and he had a right to do whatever. And we don't find a superseding event. And it was all foreseeable. Or maybe they just say, I don't know, how could a police officer really be on duty? He didn't have his weapon with him. And he's just lucky he's a buddy of the owner and the owner had the gun. So maybe they convicted based on the fact that he was a citizen. And the court said that. They said, I don't know. He's actually wearing two hats here. He can be seen as a citizen. He can be seen as a police officer. Well, doesn't it make sense, though, when you're seen as a police officer, notwithstanding the case that Justice Burkett has talked about, the pension case, he's just in there as a citizen. Yes. And he never announces because he says he just didn't think about it. He never announced. No, he didn't say he didn't think about it. He said, I had no time. There's a difference. To quote a phrase, what difference would it make? Well, I don't know what difference. Maybe everybody would have said, oh, OK, we quit. In your brief, you said 107-6. It's actually Section 107-16, which states that a police officer is always obligated to attempt to prevent the commission of a crime in his presence. So he is, as a trial court said, wearing two hats. He's obligated under the law to respond. Also, I would turn your question around, Justice Hutchinson. What if they hadn't given this instruction? Then they would be up here arguing, well, this guy was acting as a cop, and they didn't properly instruct the jury. So how could they? There's reasonable doubt. How could they have convicted? Because the testimony, he didn't say, all he said was, I came to pick up a pizza for my sister and her kids, and this happened in front of me. But his entire testimony was, I reacted this way because this is how I was trained. And you see it in the video. He took command. The other man, Mr. Terrara, was just, I mean, he was stunned. And this man, the deputy, was giving orders all the way around. Once the shooting was done, the shooting was over when he started to give orders. Correct. And according to you, maybe it wasn't over yet, but the shooting was over. There were no more pops going on. But there were two felons, three felons outside. One was Michael Sago, who apparently it was clear that he wasn't going anywhere. He had died or was about to die. But there were two fleeing felons, and he said, I don't know if I hit anybody. He didn't know if they were armed. He didn't know if they had gotten in a vehicle or were going somewhere else. And so the event was not over until those people were apprehended. He was afraid. He said, I'm afraid they went out to get weapons or more people. He didn't know. I looked at the video a number of times, and I tried to write down the sequence of how fast this happened. So when you first see them on the video, to the time they entered the door, six seconds elapsed. If you subtract out those from the ‑‑ then you see an employee at the phone. So he ‑‑ or not at the phone, or pushing the button. He's sort of down. You can't really see what he's doing. That was at 19 seconds. So 13 seconds have elapsed with these men inside. The co‑defendant leaves the register to join the fight two seconds later at 21 seconds. So that's only 15 seconds they're inside. And so the struggle is already going on. And we can't see that struggle. You can't see ‑‑ the only time you see the struggle is at the very end. You see it at the bottom of the lower right quadrant. You see part of it. But we don't see Vince Terrara grabbing the gun or any ‑‑ you don't see the pizza delivery guy who joined in on this brawl. He testified that he was punching somebody. You don't see the fight over Vince Terrara's gun. You don't see any of that. You see a very small section of that struggle at 30 seconds. So now they've been inside 24 seconds. You see the shooting of the first two men as they start to flee at 34 seconds. Then you see the two guys exit at 37 seconds. So they've been in there 31 seconds. And then you see him turning around and then you see the victim going out. That's at 42 seconds. And then you see him locking the front door at 51 seconds. All of that took place in 45 seconds. Now, he ‑‑ and he said, I never knew where the gun was. I just ‑‑ there were people in front of me. They were running. He said, I never saw anybody leaving the restaurant. Even when you look at the videos, you can't see they're scrambling for the door. But that's not what he saw. He was being ‑‑ because he turned around from being attacked and they left him. So whether he was a civilian, whether he was a police officer, both instructions were proper. And it was for the jury to decide whether he was acting as a police officer or whether he was acting as a civilian. Regardless, the entire ‑‑ there is no superseding event. You can't say that in the pause before he shot Michael Sago, that wasn't a superseding event. A superseding event would be, as I said, it has to be something totally unrelated to the entire incident. They come into the place and the pizza oven explodes and burns somebody. And they die, or they die from their wounds. Or the hot water heater explodes and scalds somebody. And they die from that. Those are probably superseding events because ‑‑ but the defendants here, the defendants, all four of them, but Mr. Coates put in action a robbery. And you see him as the lead man going in very forcefully with that gun to commit an armed robbery. And until everybody was apprehended, the two men outside and Mr. Coates inside, that event was ongoing. And the defendant has yet to tell us what superseding event there was. Is there a line of cases that Illinois doesn't subscribe to about a police officer getting involved in a shooting like this? And if there's a finding of justification, it would not be a felony murder? I didn't find any. I know Illinois does not subscribe to it. I just wondered if you were aware. Have looked outside of Illinois for other cases? I didn't find any. The defendant didn't refer to any as far as I recall. And I don't believe, you know, as long as they subscribe to felony murder, I don't see how it could be otherwise. This was one ongoing event with foreseeable circumstances, that people would resist, that people would fire back at them, that there would be a police officer there. I mean, all of these are foreseeable events, and there's nothing intervening that stopped that initial action that just came out of the blue. Could you comment briefly on why you believe that the defendant's reliance on McAuley is misplaced? On McAuley? Which one was McAuley? McAuley's case involving the instruction on resisting arrest. Frankly, I don't remember. He relied on why I said that his resistance. Yeah. Oh, because I think what I said about McAuley was that in that case, they gave two instructions that had absolutely nothing to do with the underlying charge, and they were completely unrelated to the case altogether. I can't remember. McAuley said that the instruction suggested that the defendant may have committed some other offenses. Correct, and that's not the case here. They didn't talk about resisting or anything. No, and even if they had given an instruction about resisting, well, I know there was no one that you can't show that there was an attempt under arrest, but that's it. The defendant was not charged with either attempted escape or resisting, and they gave those two instructions, and that's not the case here. So for all of these reasons, we ask this court to affirm the conviction of Lamar Coates. Thank you. Mr. White. The defendant here is not contending that Kajiki was not an officer, that he was not acting in the line of duty. But whether he acted reasonably is a question for either charges against Kajiki for his actions or a civil suit against Kajiki, not here. The state makes arguments here regarding superseding event, but those, again, are trial arguments, what constitutes a superseding event, the water heater exploding, that type of thing. That is an argument that can be made by the state at trial absent this instruction. She says that the crime concluded when the officers arrived and secured the premises, but that, too, is a factual question. Maybe the crime concluded when Kajiki locked the door. Maybe the crime concluded when they began to run unarmed. Or maybe the crime concluded when Kajiki lowered his gun. And even though his testimony was that he didn't see where everybody was going, it's very clear from the videotape that he was looking right at him in the hallway, and, in fact, wasn't initially, but rather he lowered his gun and raised it again as he saw him leave. Now, whether that was justifiable or not is a question for either another jury or a jury in a case against Kajiki, but the problem here is it's not a question for this jury, who is tasked only with the obligation to find whether it was causation or foreseeability. Have you ever seen a case where a court has determined that the crime  As a factual matter, I have not. And there are cases, of course, the opposite. Sure. I mean, Lowry is, the gun was gone, and the guy was running out, and then the victim started shooting and killed the bystander as he was shooting at the fleeing defendant. Well, and usually those cases, I don't recall, are specifically you're dealing with someone who actually is armed and they know he's armed, and despite Kajiki's testimony, he clearly wasn't armed, and Kajiki can see from the tape, Kajiki could see he was not armed or at least was not making aggressive advances toward him. So I don't know what the jury would have found in that situation, but the problem, I think, is that they were faced with that question at all. Whether or not his actions were reasonable, I think, was something that they, or justified, was something I think they shouldn't have considered because it does exactly kind of what we're doing here, which is conflating those issues of if the officer's actions are justified, therefore the defendant is guilty of felony murder. If a squad troll rolled up and the police officer jumped out and shot this civilian in the back, killed him, would this instruction be appropriate? Probably still wouldn't. It's a closer call there probably because you've at least got a marked officer. You've got the offender wouldn't know that he's an officer, could submit to authority whether factually in that case he had an opportunity to do so. The issue is with respect to the defendant's knowledge. It's not about his knowledge with respect to how somebody's going to respond. It's his knowledge that he's committing a forcible felony. He's committing a forcible felony, and as a result of that conduct, someone dies. That's felony murder. It's not what these intervening events. Exactly, and that's why it shouldn't have been given. What case supports your theory? I think you just, I think, summarized my case. I think that's the only instruction that should have been given is if this action occurs and it's foreseeable and there's causation, then it's guilty of felony murder. I think that's the problem is that wasn't what the jury was restricted to. The jury was then given all these instructions about the correctness of the actions of another person, and that, I would submit, is not relevant unless you've got a case against that other person. I mean, it may be if Pajecki has to defend himself, perhaps he's charged with wrongful death or something. Then these may be arguments, as a police officer or judge could use. How could he possibly be charged? On what theory could he have been charged with wrongful death? What plausible theory is there against Pajecki for his conduct? Well, I don't, again, I don't know. I'm not saying that there would be. You keep saying if there's a criminal case against Pajecki or a civil case, what plausible theory for either a criminal case or a civil case exists? Well, I think arguably shooting the guy as he's fleeing without a, you know, unarmed as he's crawling towards the door and shoots him in the back arguably could give rise to either a wrongful death case or some civil case. I think there may be one here. It was in the record. But I'm not saying whether that is merit or doesn't have merit. What I'm saying is these questions are questions that are better suited for that type of case when the participants are Pajecki versus whatever charge. Shouldn't the jury be made aware of what the officer was entitled to do under the facts? Shouldn't the jury be instructed as to why the officer did what he did and whether it's permissible or not? Doesn't that go with foreseeability? No, I don't think so. I don't know why it would be. And, in fact, in this case, as I said before, I think it's the problem is that here he wasn't acting. He was acting as an officer as far as he was concerned but not for the defendant's concern. And the reason that's relevant for the defendant's concern is because he has additional Pajecki, he has additional rights, namely shooting a fleeing felon, that the individual would not have,  and the reason we do that, I would submit, is to force people or encourage people to submit to lawful authority, something that these offenders had no opportunity to do. But since they didn't know he was a police officer and the civilian instruction is in, what would have been different? You're saying that they might have submitted. That's what you're speculating. Right. Well, that's the problem. I don't know why they would feel the need, as you had asked earlier, to put the other one in, because I think it's just needlessly confusing. The initial one is confusing enough because it focuses the attention from just the basic what did you put into motion, a series of events that would lead to this and was that foreseeable, to did you act properly in doing this. And when you add in that other additional police instruction, I think it more confuses the jury to know if he – I don't think it's – you keep saying it confuses the jury. Was it an accurate statement of law? That's an accurate statement of law, that instruction, correct? Yes. How could it confuse the jury then? There are plenty of accurate instructions that could confuse the jury. The problem is if they're not relevant or not. You can put in a completely accurate instruction of law. The case that you cite in McAuley is the case that you principally rely on, correct? Mm-hmm. McAuley's been distinguished by this court, though, correct? Right. You cite that case in your brief, Pius. Are you familiar with Pius? Not offhand, I'm not. In Pius, we've said – this court said, however, in McAuley, the defendant was not resisting arrest. He had already been arrested, was in custody, and there was no evidence that he was attempting to escape. The instructions, therefore, injected irrelevant matters that could tempt the mystery and confuse the jury to the defendant's prejudice. And this case is different. We've said the facts of this case are different. The defendant was charged with aggravated battery, which occurred in the process of being arrested. Here, the defendant is committing an armed robbery, and the person who was shot is attempting to escape, correct? Well, he's probably attempting to escape, yeah. It appears that he's attempting to escape. Attempting to escape. Right. So under Pius, which is a later case than McAuley, if we follow Pius, then there's nothing wrong with the instruction. Well, the instruction – I don't think there's any question the instruction was properly – It's an accurate statement. Right, it's an accurate statement, but given the facts of this case, it was just unduly confusing to the jury because of allowing the jury to then get into whether or not Kajeki's actions were reasonable – or justifiable, rather – rather than, is the defendant guilty of felony murder? Either one of them was necessary, but certainly the police one wasn't. Do we have any questions in this record from the jury asking about these things? I don't believe we do, no. Thank you very much. Thank you, counsel, for your arguments this morning. We will take the matter under advisement. We will issue a decision in due course. We will take a brief recess to prepare for our next case.